Good morning. We have two cases on the calendar today and one on a submission, so it's a fairly light calendar. I'm told the lawyers are here for both of the cases that are going to be argued. And so I will say just in terms of ground rules, the advocates are free to take their masks off when they're at the lectern, if they wish. Not required to, but certainly free to. That sometimes makes the acoustics easier, but your call either way, okay? But otherwise, while you're listening, if you would just stay seated, excuse me, keep your masks on. You should stay seated too, but keep your masks on. All right? Thank you. Okay, so Mr. Malin, you have reserved three minutes for rebuttal. That gives you seven minutes out of the gate. Just give us one second before we start. Okay, the floor is yours. Thank you. Good morning, Your Honors. May it please the Court, my name is Joshua Malin. I'm here on behalf of the plaintiffs' appellee. I want to focus the argument, really, on the communicable disease coverage that's contained in the policy. That is an extension of coverage that carries with it a $1 million sublimit. That's where I want to focus our argument today. The communicable disease coverage is defined in the policy to include a virus that may be transmitted directly or indirectly from human or animal to human. And so the question becomes on this appeal whether the Miami emergency orders constituted a communicable disease event which would have triggered this coverage. Now, in order for this event, as defined, it has to be issued by a public health authority, and it has to be directed to a location to be evacuated, decontaminated, or disinfected due to communicable disease at such location. So for our purposes, we're going to focus on the evacuation. That's where the district court decided to dismiss even that portion of the complaint. Counselor, I hope at some point you'll direct your attention to the fact that the loss that is caused by the communicable disease has to be for direct physical loss or damage to property insured. I'm going to address that right now, Your Honor. Because that part actually bothered me to a large degree. And it's interesting that- I can see why it might. I'm sorry? I can see why it might. But let me explain to you why, found in this portion of the policy, that requirement is illusory. Because if you look at what the communicable disease covers, it covers one of three things. It covers either, on the property side, destruction of the property, or repair to property, or mitigation. And if you think about it in terms of the coverage, if physical loss or damage, as defined ubiquitously and generically as permanent alteration, as we've seen in scores of other cases, I'm not arguing that here, you wouldn't need the communicable disease coverage. I have- if the communicable disease coverage, as an extension, and that's why I emphasize that, has to add something other than what the policy already covers. So if I have physical loss or damage, I don't need the communicable disease coverage. Under the normal policy, I have physical loss or damage. I have coverage for physical loss or damage. How long is it in there, though? Then you're saying it's just surplusage in this provision. I'm saying it's illusory because of the nature of how they define communicable disease. Communicable disease is defined as a transmission directly or indirectly from human to animal. By definition, the way they've described it, you're never going to have independent physical loss or damage, merely from the transmission. And the courts continue to remind us, in the scores of decisions that have decided that physical loss or damage, in its generic sense, has to be something permanent, that COVID-19 is something that's transmitted in the air from human to human. I think we know how COVID-19 works. My God, we're all wearing masks, except for you. So I guess the question I'm puzzling over, one of the questions is, can you think of a communicable disease that causes physical damage? Can I think of- It's a property. Can I think of a communicable- And the answer is no. The way it's defined here, the answer is no, which is why I'm suggesting that physical loss or damage in this context, specifically as it relates to communicable disease, can't mean the physical loss or damage that we understand requires a physical alteration. Because I'll go back to- So mold came to mind for me, but I don't know if that's a communicable disease. But that's sort of something that does cause sort of physical damage, that is different probably than the coronavirus. Yes, but once again, if that is true, then I don't need this coverage, and I don't need to be sublimated to a million dollars. This is an extension of coverage. This has to mean something more because, as I said, under normal physical loss or damage, look at the policy. I would be covered. I have business interruption. I would be covered, not sublimated. So if this is an extension of coverage, which is what it's labeled, the record on page 141, you'll see how it's laid out. It says extensions of coverage applicable to property, business income, and extra expense coverage. So I would submit to you that we cannot read physical loss or damage, even though I agree with you, Your Honor, that it's there. I can't erase it. My whole argument is illusory, that this is not an enforceable policy because to enforce it would mean that policyholders like your client have to be paying premium for nothing. Correct. So my time is running. I want to focus on the evacuation because that's where the district court went on this. The district court didn't say, by the way, this is physical loss or damage, therefore I don't even have to deal with it. She dealt with it. She dealt with it by saying this wasn't an evacuation. So if you look at the definition supplied by the defendant in their brief on page 36, they define it or quote Merriam-Webster as saying a withdrawal from a place in an organized way, especially for protection. So look at the Miami statute. The Miami statute said this is what we're doing, no new reservations, no extension of reservations within X number of weeks. Right. The question is, is that an evacuation? Well, the district court said immediate, but immediate is not in the policy. And there's nothing in the definition of evacuation that says it has to happen immediately. That was a word that was stuck in by the district court. Well, I guess the question is, does that word mean immediately? An evacuation, I mean, we have a fire drill doesn't mean get out of here sometime this week. You evacuate because of the threat. So can there be a slow evacuation? Well, there has to be an organized evacuation. That's what this was. This was an organized evacuation where it says everybody has to- Well, some people get to stay, period, right? People who, I guess, have serious health issues or something, they might be exempt from this order, correct? The only people who were exempt from the order were what they called essential workers that were providing services that the local hospitals, etc., needed. They needed people near- So what you're saying is it's a partial evacuation, I think. I don't see how you could say it's a full evacuation, right? Yes, from a public policy perspective, I would submit to the court that it would be very tough to have a hotel who's doing its civic duty to provide housing for people who need to be near the hospital on the one hand, and as a result of that, forfeit coverage under their insurance policy. Well, that's not why they're forfeiting coverage. I mean, this actually takes a little bit of the sting out because it allows them to have some rooms filled. But the question is, does the fact that some rooms are filled mean it's not an evacuation? I don't think so. Plus, you have all, on the other emergency order, you have all the restaurants inside the hotel that were also completely shut down. So the economic effect of what this is supposed to provide me, this $1 million of limited coverage, is in fact triggered. I think my red light means I'm probably over my time. Well, if you have a little something, you know, gosh, I'm feeling generous. And if these other guys don't drive all the way in the ribs, I'll probably give you another 30 seconds. Fair enough. So I just want to hit quickly on this concept of location-centric, that somehow the hotel had to be named in the order. And the courts, the lower courts have been split on this. You have one case out of the Seventh Circuit that just ruled that. I would submit to the court it really doesn't make sense. If I have, we have the experience of 9-11. 9-11, because they were concerned of the gases, they closed down from Canal Street down. Or you can imagine just a block where there's an explosion, a chemical explosion, and they issue evacuation order. They're not issuing an order. They're not writing 123 Mulberry Street, 456 Center Street. They're not writing that in the order. They're saying we're closing off the block. To suggest that this order gets triggered only when there's a specific address really elevates complete- Well, it's not a specific address as much as a specific location. So everything below Canal Street or everything below 34th Street is pretty specific as to location. What we're talking about here is hotels writ large throughout the state. That's the location, Miami-Dade County, right? Correct. And only because that's where, A, that's where it's found. But keep in mind, we have pled that it was there. We've come forth with a statistical analysis as to why it was there. So why the COVID-19 would have been, in fact, in the hotel. So we're not just trying to generically argue that, you know, that there's no, that it's just out there. We're saying in the pleadings, which have to be proven, obviously, but we're at a motion to dismiss, that it was there. We can establish statistically it would have been there in March and April of 2020. People are not wearing masks. 50% of the people are asymptomatic. It was there. Okay. Let's stop there. You've got three minutes of rebuttal. Very good. Thank you. We'll hear from you again. We'll now hear from Mr. Solberg. Am I saying that right? Yes, Your Honor. Okay. Mr. Solberg again. You can take the mask off if you'd like, but don't feel compelled. We are stressing it's an individual decision for people who are advocating once they're at the lectern. Of course, Your Honor. Thank you. May it please the Court, Your Honor, Brett Solberg for the Appalachee. I'd like to start with this idea of location-centric. No, don't start there. Start with the illusory argument. All right. I think that's the whole ballgame, it seems to me. Okay. So why, if the communicable disease portion of the policy only covers physical loss, physical damage rather, what does that part of the policy get you that you don't otherwise have? So it adds something else because if you look at the language of the communicable disease coverage, it says we will pay for direct physical loss or damage, and I'm reading from page five of my brief at the bottom, to property insured caused by or resulting from a communicable disease event. That's a defined term. A communicable disease event is the order, and this is on the next page, means an event in which a public health authority has ordered that a location be evacuated. So in other words, it's not- I think we get that, but the issue is if direct physical loss or damage to the property is a prerequisite for coverage, how do you ever get coverage under this portion of the policy? So you get coverage because you may, to comply with the order, have to cause direct physical loss or damage to tear out, remediate. So if you go and knock down your own wall, that's not covered. Hurricane knocks under the normal part of the policy. So what communicable diseases cause property damage or cause the need to knock down walls? Can you think of any? Sure. Legionella is a prime example. So why is that different? So Legionella itself wouldn't necessarily be covered. It would be covered under the communicable disease extension if the public health authorities said we detected Legionella at your property, you have to remediate it, and you have to tear out the walls to get to it. All of that access, the needed access, would be covered under this extension, whereas it wouldn't necessarily be covered because it wouldn't be a sudden, direct, accidental- In other words, there can be an intermediate cause. There's the disease, then that causes the officials to say you've got to tear down the wall, and tearing down the wall causes the physical damage. That's correct. So it's a but-for cause that is in the past, not necessarily an approximate cause. Yes, Your Honor. The communicable disease would give rise to the event. So the communicable disease would be detected by a public health authority, the public health authority would issue the order, and its compliance with the order, if compliance with the order causes direct physical loss or damage, then that's covered. Okay, and what about cleaning, detoxifying, and disinfecting? That would also be covered if there was a communicable disease event. Okay, let's assume, because I know that's disputed, but let's assume there's a communicable disease event. In this case here, you would be conceding that the cost of Clorox wipes is, what, covered by the policy? It would be under this policy, yes. And, of course, there are different levels of necessity, or different levels of severity, in what you have to do to remediate, clean up, detoxify, comply with the communicable disease event order. But so Legionella is one you said, where that is sort of like mold, it gets into deep, dark places that have to be knocked down and burned and destroyed? Yes, Your Honor. Any others? Those are the classic examples. Legionella is the root of why this coverage exists and why most hotels buy it. There was an outbreak, a very famous outbreak, I think in the 70s, and that's why this coverage was created. There are other communicable diseases that could give rise to an order. I can't tell the court- I can see lots of diseases giving rise to an order. I'm trying to figure out which are the ones that are going to lead to direct physical loss or damage to property. It depends on what the government requires you to do to comply with the order. That's the point. And that's what separates it from the primary coverage. The primary coverage is a hurricane comes in- I get that. Damage is something. I guess the question is, this is illusory if there is no communicable- if it's not even imaginable that there's a communicable disease that would be covered by this policy. Because the way it's defined, the way the communicable disease is defined, it's basically just airborne particles and you're never going to have to- you may have to air out a place, but you don't have to burn it down or knock it down. But you're giving me an example of Legionella as a communicable disease that would require or might require the kind of physical remediation of tearing down walls. Yes, Your Honor. Okay. Can you think of any others? Not as I sit here today. I stand here today, Your Honor. Okay. But- and so if we back up a little bit and take the other things that Mr. Mellon was talking about, on the location-centric, we're not saying that it has to be named in the order. But as the Seventh Circuit said in the Paradigm case, and we sent in a Rule 20HA letter last week on this, it has to be due to- the communicable disease event, the order issued, has to be due to the presence of a communicable disease at the insured location. Location is a defined term in the policy, and it's that due-to language. Now, as the Seventh Circuit said, we don't know the level of nexus, but we know it has to be more than a general prophylactic order that's generally applicable everywhere. But why do we know that? So what about the policy that says that? So what the Seventh Circuit said is there has to be some degree of causation, the words due to in the definition of communicable disease event. So what that term says is communicable disease event means an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location. Okay, so if the order in the case of Legionella said, okay, this square block of Miami Beach needs to be burned to the ground because of Legionella, your view is that still wouldn't be covered because it's too vague? Not necessarily, Your Honor. It depends. I mean, arguably, if there were some evidence that Legionella were present on the property and that the property and that's why the court or the government authority, the public health authority, issued that order, that would be covered. Well, it seems to me you're saying it requires a property-specific identification. Not in the order necessarily, but there has to be some evidence or some pleading, at least at this stage, which there wasn't, that the reason that the public health authority issued that order was because it detected a communicable disease outbreak at that property. Where in the language of the policy does it say at that property? So if you look at page 6 of our brief, Your Honor, the definition of communicable disease event, which is in the center there, says due to the outbreak of a communicable disease at such location. And the Seventh Circuit has interpreted that to mean at that insured location. We don't have to follow the Seventh Circuit. You don't, Your Honor. So just such location, your view, carries a ton of freight and it means they could have said the property because this is a policy that covers particular property, but they didn't say that. But we should construe it as narrowly as if they had said the insured property. Location is a defined term, Your Honor, so it is the insured property. Well, so wait a minute. So the location, what's the definition of location? I don't have it right here, Your Honor, but I believe it says something to the effect of the property is listed on the declarations page. This is all at page 60 in the record. Is it not at 637 and thereabouts, A637? That's correct, Your Honor. That's correct. Location is defined as the legal boundaries of a parcel of property at the address described in the declarations. Thank you, Your Honor. So your view is that the outbreak has to be at the insured property? That's correct, Your Honor. And it has to be issued, the order which forms the communicable disease event has to be issued due to the outbreak of communicable disease at that location. Because if you read it any other way, you read due to out of that policy. There has to be some causation in due to. Counsel, I appreciate that you offer the Legionella as an example. But I'm wondering, wouldn't your policy cover a presently unknown instance that developed later and fit within the policy definition? In other words, does it have to be a known disease that does the effect? Or is this a policy that you would be glad to collect money for that covers a risk not presently known, but one that eventuates later and fits within the policy definition? So if I understand your question correctly, Your Honor, are you suggesting that if at some point in the future, COVID-19 were found to have caused direct physical loss or damage? Well, I wouldn't even limit it to COVID-19. Just some virus comes along that is not currently known that does cause physical damage. Would that be covered? Yes, Your Honor. That's what I'm wondering. So the search for a current one seems to me not to be a necessary part of your argument. I think that's correct, Your Honor. But it's helpful, I imagine. If there is such a thing that you can point to that would be covered, that undermines any argument of illusory language in the policy. And again, Your Honor, it's not the communicable disease itself that has to cause direct physical loss or damage to give rise to this coverage. It is if you want business interruption insurance. In that case, the outside peril, be it a viral particle or wind or hail, has to cause direct physical loss or damage. In this case, the direct physical loss or damage has to be caused by the order. The order itself, in other words, compliance with that order, has to cause it. So if I go in there with a sledgehammer to remediate, to tear down the building because the order says you are permanently infected, you have to burn this building to the ground, that would be covered to comply with the order. And that does not mean that the communicable disease did anything whatsoever to harm the property itself. No, I think we understand that. And you wouldn't disagree that if Legionella was in the west wing of the hotel and you had to knock down the whole west wing, but the east wing could operate, then they'd be covered for the damage to the west wing. Assuming a communicable disease event occurred? Correct. Absolutely. Okay. Thank you, Your Honors. All right, thank you very much, Mr. Solberg. Mr. Malin, you've got three minutes for rebuttal. Yeah, so here's the problem with the argument. Communicable disease is defined as disease, bacteria, or virus. Any disease, any bacteria, any virus. And we're constantly told that COVID-19 as a virus cannot by definition cause physical loss or damage. Right, so the policy doesn't cover any disease or virus. It covers diseases or viruses that cause direct physical damage. But that's not how the definition found on A-175, the definition of communicable disease, merely means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human. Right, that's the disease. Period. But the policy covers for direct physical loss or damage to the property resulting from a covered communicable disease event. Correct. So let's stay with Legionella. Fine. Would that be covered by this policy? Well, so he's created a scenario where you have to tear things out. The problem- What's wrong with that? No problem, except that it also provides me coverage for mitigation. Where's the physical loss or damage for mitigation? There isn't. His scenario is this is what we cover. You've got this disease out there. We need to eradicate it. Right. So we need to tear things out. There's your physical loss or damage. Right. We need to repair things. We're moving things around. There's your physical loss or damage. Where's the physical loss or damage for mitigation? No, no, no. I think the point is that- Where's the insurance that you purchased is the question. No, I think the point- Yes. Can I just offer this to you? I'm sorry. So if the Legionella requires you to knock down walls, then you're entitled to the cost of knocking down the walls, the cost of repairing or rebuilding the property, and the cleanup and disinfecting that accompanies that. But you first need to have physical loss or damage. With all due respect, Your Honor, that's not how the policy is written. And one of the fundamentals of insurance law interpretation is that the policy language and terms have to be clear. And any terms or any policy provisions that are open to more than one reasonable interpretation, the benefit goes to the insured and especially- It says for direct physical loss or damage to property insured, because that's the question. I understand that, but it goes back to what I said before, which is I've got coverage- I'm sorry. I don't see anything ambiguous about that. The problem is I have coverage already for physical loss or damage. This is supposed to be an extension, meaning supposed to add to my coverage. And it gives me a $1 million supplement. What's the benefit for my premium, for what I'm paying for this extension of coverage, if I already have coverage for physical loss or damage to my property? By the other terms, which- But don't you- Do you have it from a communicable disease? I have it from anything that's going to cause physical loss or damage. Any physical loss or damage, unless there's an exclusion in the policy, because this is an all-risk policy, so it insures everything except that what's excluded. So if my property suffers physical loss- This would be the first time a policy had a general term that arguably gave coverage and then had a specific term so that in the event the specific term applied, the insurer didn't have to argue that the general term really covered it. Plenty of policies do that, don't they? Well, yes, but here when we're talking- That's what you bought. You bought the risk. What you bought is not just insurance coverage. You bought exemption from another lawsuit in the event the specific clause was triggered. Well, when you say- I missed your last point, Your Honor. There can be a general clause that arguably covers an event. Okay. And then there can be a specific clause that nails it, and that's what the insured buys, is the avoidance of the litigation over the reach of the general clause. So when you say, well, it really is covered, but you're having to fight uphill to get that, whereas if there's a specific clause, then you don't have that litigation. So what I would say- Well, so what I would submit to Your Honor is that's true when you're using it as a shield, meaning what you're saying is, here I have additional coverage, so I don't have to make that fight. But here it's being used to negate coverage. So it's being used as a sword against me. So, no, this doesn't benefit me. This is, in fact, they're using something that they've sold, which is an extension of coverage, to now argue, based on the way physical loss or damage has been defined by the courts, as to say, you don't even get communicable disease coverage, even though COVID-19 is a communicable disease. Sometimes the specific one doesn't cover it, and that's what they're saying here. Sometimes it does, sometimes it doesn't. Correct, but when you have this construct, and now based on the way the courts have interpreted what physical loss or damage means, to impose that requirement on the communicable disease, basically wipes out the communicable disease coverage, at least parts of it. Well, not the loss of business income, right? What do you mean? Well, I mean, that would, so the Legionella example, you're getting, you would be getting the loss of business income associated with being out of business because the thing had to be knocked down. According to the physical loss of damages found in the business income provision under communicable disease also. Correct me if I'm wrong. It seems to me, and I may be wrong here, but it seems to me in the other cases that have come up, the issue has always been whether there was a direct physical loss or damage to the property that triggers the insurance. That is, something collapses, and then maybe next door, and then you have to evacuate because the building next door might crash into this building. Or there's loss of property on the premises, a theft or a fire or something of that sort. This is different. This is communicable disease. And they're only paying up where that leads to a loss of property. Right, but- But, as opposed to something physical happening. But the policy also has, this policy, also has civil authority coverage. So the reason I'm not, the reason that does- The civil authority coverage is usually tied to the actual damage to the property. Correct. So you, so I 100% agree with you. But this doesn't. This adds to it and says we're- Only if the physical loss or damage is not read the same way. Otherwise, the civil authority order- No, it's the same thing, because you're losing, the property ends up being destroyed. It's not the original cause of it. It's the end result here, because you have to tear down property in order to remediate against the disease. But that's on the property side, not on the business interruption side. The civil authority order, which prevents me from going into my premises, that shuts down my premises based on a civil authority, right, is in fact similar to this Miami ordinance. I can't depend upon that. I can't rely on that in this case based on the jurisprudence, because you would say to me, correctly according to the courts, that you need permanent substantial physical injury. Loss of use as a theory has been rejected. I get it. That's why I'm not arguing that to this court. You've had, you've issued five or six decisions. I'm not, you know, I'm not sticking my head in the sand. My point is that that civil authority, but for that definition of physical loss or damage, I would have coverage using this Miami provision under my civil authority order. I don't. So I have to rely on my extension of coverage, which is some limited to a million dollars. But if you impose the same requirements, then I have, there is no extension of coverage. There's nothing. Well, but there is though, right? So, I mean, if the hotel next to yours is just shot through with Legionella, and so the civil authority says we've got to knock down your building to treat the problem in that building, then you'd be covered for the physical loss, right? But the direct answer to your question is yes. But this coverage gives me more. It gives me mitigation, which does not in and of itself connote any type of physical destruction. It's mitigation, it's mitigation, contain, mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, clean up, remove, dispose of, test for, monitor. Look, we all know what it says. I think the issue is, does that get triggered before there's been physical damage? So my point is, what counsel has said is that if you need, in order to comply with an order, you are going to destroy property. That is what we cover. And what I'm submitting to you is that works for A and B. It doesn't work for C because there's no destruction. But anybody who's built something knows how this goes. I mean, you might have to knock something down, you have to build something back, and then you have to clean up a ton of stuff around it. And this is going to cover all of that. But it's A, B, or C. It's not A, B, and meaning those are three independent triggers of coverage. No, but each is conditioned on a physical loss or damage to the property. But that's the point. There would be no physical loss or damage associated with just mere cleanup, mere remediation, mere treating. Right. That doesn't work. That's the point. You wouldn't be covered for that. But it says I am. Okay. That's the problem. But it lists it after you've said we'll pay for direct physical loss or damage to property insured or caused by, too. And then it lists. But it's still, the requirement that there be direct physical loss is still there. Right, but that's the conundrum. How do you trigger the mitigation grant, which is a separate independent coverage grant, if you are going to require the way physical loss or damage has been defined generically with respect to the rest of the policy? That's what makes this provision illusory. Some of the mitigation provisions more easily fit within that paradigm. But some of them don't, and as long as one of them doesn't, that's a problem. All right, well, my goodness, Mr. Mallon, you got your money's worth. And I say that jokingly, but thank you. Well argued, we will, of course, reserve. But an interesting case. Anybody who says insurance cases are not interesting doesn't know what they're talking about. They go to the heart of really important things for clients who care. So thank you both. Well done. Thank you.